SECRETARY OF THE TREASURY OF PUERTO RICO, Petitioner, v. SUPERIOR COURT, SAN JUAN PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent.

No. C-66-52.    Decided November 22, 1967.

*J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for petitioner. *Dubón & Dubón* and *A. Torres Braschi* for intervener Aida Padilla Abella in the character of tutrix of her husband Frank Abella Hernández. *Edelmiro Martínez Rivera* and *Edelmiro Martínez, Jr.,* for intervener María del Carmen Saló, Widow of Seraballs.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

█ We conclude that a mortgage note payable on demand and issued to the order of a determined person, and the mortgage securing it are not rendered worthless and ineffective, as the trial court concluded, by merger of rights, when the negotiable instrument was endorsed to its drawer, in view of the fact that the latter placed it in circulation again by giving it in pledge to the Secretary of the Treasury, notwithstanding that subsequent to its issuance and the record of the mortgage deed, but prior to the giving of the note in pledge, the property thus encumbered to secure the effectiveness of judgment in an action for damages against the drawer was attached, and that said property was subsequently adjudicated to the attacher who obtained a favorable judgment.

On May 29, 1961, Frank Abella Hernández and his wife, Aida Padilla Abella, executed, before a notary public, a mortgage deed upon a property belonging to them to secure a mortgage note payable on demand, for the amount of $25,000, which was issued in favor of Juan Hernández Ruiz, or at his order. Said mortgage deed was recorded in the Registry of Property on June 7, 1961.

Interveners herein, María Saló and María del Carmen Seraballs Saló, brought an action for damages against Frank Abella Hernández and in order to secure the effectiveness

of the judgment which would be rendered in due time, they attached said property. On December 15, 1961, the writ of attachment was presented in the Registry of Property and it was recorded on February 20, 1964.

On March 16, 1964, Hernández Ruiz endorsed said note to Abella Hernández, or to his order, and that same day the latter endorsed it in favor of the Secretary of the Treasury, or at his order. On April 21, 1965, Abella Hernández signed a contract of pledge upon said note in favor of said officer to secure the payment of income tax which he owed.

On December 17, 1965, the interveners attached said note, which, on that date, was in the possession of the Secretary of the Treasury.

On January 20, 1966, in order to enforce the judgment in the action for damages,[1] the mortgage property was sold at an auction sale, it being adjudicated to the interveners for the amount of $30,000.

On March 4, 1966, the Superior Court, San Juan Part, was requested to order the cancellation of the aforementioned mortgage. The Secretary of the Treasury was summoned and he objected to the interveners' petition. On March 25, 1966, said court entered an order directing the Registrar of Property of San Juan to cancel the record of the mortgage deed. Defendant Abella Hernández filed a motion for reconsideration—from the preceding order—which was denied.

In the aforementioned order, the trial court concluded that:

"Although the cautionary notice in the Registry of plaintiff's attachment was subject to the mortgage which defendant had constituted in favor of the holder of the note for $25,000 issued on May 29, 1961, evidently the subsequent return and delivery of the mortgage note to the defendant by the original holder, Juan Hernández Ruiz, placed the plaintiff, as defendant's creditor, in a position of preference against any other future holder

---

[1] Which we affirmed in *Widow of Seraballs* v. *Abella Hernández*, 90 P.R.R. 360 (1964).

of said note in view of the fact that as owner of the property and, at the same time, holder of the note secured by the mortgage executed, the note as well as the mortgage, had lost their legal validity and efficacy as to plaintiff, by reason that there had been merged in defendant himself the condition of debtor and creditor of the obligation evinced by the note.

"Consequently, on April 21, 1965, date on which the note in question was received from defendant and taken in pledge by the Secretary of the Treasury, the latter had knowledge from the Registry that the property which secured said mortgage note was subject, with preference, to the cautionary notice of attachment entered in favor of plaintiffs who acquired, by virtue of said attachment and subsequent adjudication at auction of the property, the right to cancel in the Registry the mortgage record securing the note. See *Bank of Porto Rico* v. *Solá & Sons et al.*, 26 P.R.R. 57; *Vicenty* v. *Vázquez et al.*, 11 P.R.R. 275, and *Schlüter* v. *Heirs of Díaz*, 46 P.R.R. 614."

The Secretary of the Treasury, petitioner herein, assigns the commission of the following errors by the trial court:

"1.—. . . in deciding that the mortgage note as well as the mortgage deed lost their legal validity and efficacy by reason of there having been merged in defendant the conditions of debtor and creditor of the obligation evidenced by the note.

"2.—. . . in applying to the case the Civil Law principles relating to the merger of rights of creditor and debtor.

"3.—. . . in deciding that the return and delivery of the note to the defendant by the original holder placed the plaintiff in a position of preference against any other future holder of said note.

"4.—. . . in deciding that it is proper to cancel the record of the mortgage deed executed by defendant . . . and in ordering the Registrar of Property to cancel said mortgage deed."

Since the errors assigned are closely related we shall discuss them jointly.

█ Article 153 of the Mortgage Law (30 L.P.R.A. § 266) in force authorizes mortgages constituted to guarantee obligations negotiable by means of endorsements, like the note

in this case, or securities to bearer.[2] *Rosario* v. *Registrar*, 89 P.R.R. 831 (1964). In cases of mortgages executed to guarantee securities to bearer or negotiable by means of endorsements, the mortgage lien becomes effective when the mortgage is created and recorded, and from that moment there exist: a known debtor, a generic creditor or creditors having the character, under whatever name, of endorsers or holders; a definite obligation, and a security of the same. *Heirs of Franceschi* v. *Registrar*, 39 P.R.R. 665, 669 (1929).

█ A mortgage may extinguish by merger of rights of creditor and debtor. *Hau* v. *Registrar*, 58 P.R.R. 804 (1941). And pursuant to Art. 79 of the Mortgage Law and Art. 132 of its Regulations, when a debtor has not disposed of the securities to bearer, the mortgage right may be considered extinguished *at the will of the debtor* and he may seek its cancellation. *Flores* v. *Registrar*, 67 P.R.R. 827, 830–831 (1947).

█ On the other hand, the note in question is a negotiable instrument and therefore it is governed by the provisions of the Uniform Negotiable Instruments Act. *Paris* v. *Canety*, 73 P.R.R. 386 (1952). Section 472 of the Commerce Code (19 L.P.R.A. § 201) provides that a negotiable instrument is discharged, among other circumstances, when the principal debtor becomes the holder of the instrument at or

---

[2] Article 153 of the Mortgage Law provides that:

"In a mortgage created to guarantee obligations negotiable by means of endorsements or securities to bearer, when the mortgage interest is alienated or assigned, it shall be understood that the latter is transferred together with the obligation or with the deed, it being unnecessary to give notice thereof to the debtor, or to record the transfer in the Registry.

"Such obligations may be constituted by the owner of an estate or interest, without specifying the name of the creditor, executing them generically to the order of the person in whose favor the handwritten documents may be transferred or endorsed by the mortgagor."

See also, Arts. 132, 182, 183, and 184 of the Regulations for Execution of Mortgage Law (30 L.P.R.A. §§ 1032, 1116, 1117, and 1118). *Godreau* v. *Registrar*, 37 P.R.R. 614, 617 (1928).

after maturity in his own right. This provision is not applicable to the case at bar since (1) when the note in question went back to the principal debtor and he endorsed it in pledge to the Secretary of the Treasury, without it appearing that said endorsement was made after the maturity of the note, it is assumed that its transfer to the Secretary of the Treasury was effected after the instrument was overdue (§ 398 of the Commerce Code—19 L.P.R.A. § 76); (2) since the note was payable on demand, its maturity could only occur when the holder demanded payment of the obligation, a circumstance which was not shown to have occurred before the endorsement in favor of the Secretary of the Treasury (§§ 398 and 360 of the Commerce Code— 19 L.P.R.A. §§ 76 and 8); and (3) the purpose of said provision is to protect the parties to the instrument and not a person who is not a party thereto; as the attacher was in the case at bar. *State Finance Co.* v. *Moore*, 174 Pac. 22 (Wash. 1918).

Section 403 of said code (19 L.P.R.A. § 81) provides that where an instrument is negotiated back, to a prior party, such party may reissue and further negotiate the same. *Citizens Nat. Bank* v. *Loranger*, 113 So. 129 (La. 1927). When the principal debtor, after reacquiring the note in question, endorsed and gave it in pledge to the Secretary of the Treasury, he actually negotiated it, placed it in circulation and by virtue thereof the instrument emerged with all its validity and effectiveness. *Vendrell* v. *Torres*, 85 P.R.R. 842 (1962).

The merger of rights of creditor and debtor is not necessarily of a permanent nature, so that when it occurs, under the circumstances of the case at bar, the rights of the parties shall not be affected definitively and forever. In *Perocier* v. *Registrar*, 47 P.R.R. 156 (1934), we indicated that certain circumstances may be ground for the revival of a mortgage

which had been cancelled by merger, upon declaring null the operation which gave rise to the merger of rights.

■ It is a generally accepted doctrine that the merger of rights may be of a temporary nature so that when the merger ceases or is revoked the extinctive effects it implies should also cease, and, consequently, the obligation cancelled by reason of the merger revives in the same terms and manner as at the time of the occurrence of said merger. I-II Puig Brutau, *Fundamentos de Derecho Civil* 371 to 375; 4-1 Puig Peña, *Tratado de Derecho Civil Español* 337 (1951); VIII-1 Manresa, *Comentarios al Código Civil Español* 698 (5th ed. 1950); Ignacio de Casso, *Derecho Hipotecario o del Registro de la Propiedad* 710–723 (4th ed. 1951).

In *Arroyo* v. *Registrar*, 86 P.R.R. 343, 355 (1962), we said that the Mortgage Law should be interpreted "in such a way as to facilitate rather than obstruct the transactions, giving more attention to substance than to theoretical details and having in mind the principle that resort is had to the registry for protection and not for prejudice."

■ As this case deals with a negotiable instrument payable on demand so that its effectiveness and efficacy is not lost when in the course of its circulation in the market it is negotiated back to its drawer and the latter reissues it, we conclude that the mortgage deed executed to secure it is not rendered void either by the temporary tenure of the principal obligation by its drawer. Therefore, the cancellation of its record in the Registry did not lie.

■ Although it is true that while the drawer retained the note its effectiveness was in suspense, and by virtue thereof the mortgage to secure it was temporarily latent, as soon as the note was placed again in circulation (in this case as soon as it was endorsed and pledged with the Secretary of the Treasury) the effectiveness and efficacy of the note, as well as that of the mortgage securing it, were revived

in the same terms and manner as they were when the drawer negotiated back said note. When the drawer negotiated it back the juridical situation is identical to the one when a person issues a promissory note payable to the bearer and, on demand, secures it by mortgage over a property and retains the negotiable instrument for a time and then sells it or pledges it or in any other manner circulates it. While he retains the promissory note the efficacy and effectiveness of the same and that of its guarantee are latent, but as soon as the tenure of the instrument is transferred, the rights which emanate from the instrument and its guarantee are in full force and effect, *from* the very date on which the former was drawn and the latter was presented for registration in the Registry of Property.

. The provisions of the Negotiable Instruments Act and the Mortgage Law and the very nature of the securities in question require the conclusion we have reached in order that the provision of § 403 of the Commerce Code and Art. 153 of the Mortgage Law shall produce the desired effect and do not become dead letter or ineffective, and that, on the contrary, by virtue thereof, the circulation of negotiable securities in the market shall continue unaltered and not restricted or diminished, indispensable circulation in any economy in full development. Said mortgage being a lien recorded prior to the attachment which gave rise to this appeal, the attachment cannot prevail over the former.

. By virtue thereof, (1) the order of the trial court of March 25, 1966, is set aside; (2) the cancellation of the mortgage performed by the Registrar of Property of San Juan, First Section, on May 18, 1966, is annulled; (3) it is determined that said mortgage subsists in full force and effect; (4) it is decided that the attaching creditor acquired the property in question subject to said mortgage lien; and

(5) the case is remanded to the trial court to proceed according to the terms of this opinion.

Mr. Justice Blanco Lugo concurs in the result.